Estate of William W. Paulosky, Deceased, Joseph A. Paulosky, Executor v. Commissioner.
Estate of William W. Paulosky v. Commissioner
Docket No. 12926.
United States Tax Court
1947 Tax Ct. Memo LEXIS 45; 6 T.C.M. (CCH) 1176; T.C.M. (RIA) 47297; October 29, 1947
*45 Fred L. Rosenbloom, Esq., Packard Bldg., Philadelphia, Pa., for the petitioner. William H. Best, Jr., Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $11,413.62 in the income tax of the decedent for the year 1943. The only issue for decision is the cost of certain brewery buildings, machinery, and equipment for the purpose of establishing the proper basis for depreciation. Findings of Fact William W. Paulosky died on December 13, 1944. He filed his income tax return for 1943 with the collector of internal revenue for the first district of Pennsylvania. A brewery, including land, building, machinery and equipment was conveyed to the decedent on February 24, 1932 by a deed which recited that the consideration was $1.00. There was a mortgage in the amount of $56,000 then on the property. The decedent paid the mortgage and it was satisfied on July 8, 1943. The decedent also paid liens on the property in the amount of $6,553.83. The decedent, in his return for 1943, claimed depreciation of $2,400 on buildings and $9,148.80 on machinery. He showed $79,215.09 as the cost of the buildings and *46 $130,694.73 as the cost of the machinery. Corresponding costs had been shown on previous returns and the deductions based thereon had been allowed. The Commissioner, in determining the deficiency, disallowed $10,852.03 of the depreciation claimed. He said the amount disallowed was excessive and explained: "The basis of the brewery properties acquired by the decedent has been determined under section 113 (a) of the Internal Revenue Code, to be the cost of such properties in the total amount of $62,500.00, allocated as follows: Buildings
$23,437.50
Machinery and equipment
31,250.00
Land
7,812.50"
The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner has determined that the total cost of the brewery property to the decedent was $62,500. The parties have stipulated that the decedent paid a mortgage debt on the property in the amount of $56,000 and also paid liens which were on the property at the time acquired in the amount of $6,553.83. The total of those two figures is $62,553.83 as compared to the $62,500 used by the Commissioner. No point is made of this small difference. The *47 petitioner, nevertheless, asks the Court to find that the cost to the decedent was $75,000 for buildings and $100,000 for machinery and equipment. A former owner of the brewing company gave a mortgage on the property to Mutual Realty Company in 1927 and defaulted on the mortgage. The property was sold at sheriff's sale to the president of Mutual who then conveyed the property to a "straw man". The straw man gave the president a mortgage for $56,000 secured by the property and immediately transferred the property to the decedent. Thereafter, two stockholders of Mutual filed a bill in equity against the president, the straw man, and the decedent, alleging that the president had no authority to take title to the property in his own name or to make the conveyances, all of which was known to the decedent. The stockholders prayed for a nullification of the transfers and a conveyance of the premises to Mutual. That litigation was settled by an agreement of the parties on November 6, 1933. The petitioner accounts for the additional cost by contending that the decedent made payments of money to the disgruntled stockholders in order to effect the settlment. The petitioner did not introduce *48 any direct and reliable evidence that the property cost the decedent any more than the amount stipulated. He says that the property was acquired 13 years prior to the date of the revenue agent's examination upon which the deficiency is based; all of the principals involved in that transaction are now dead; and none of the taxpayer's records other than his general ledger can be found. He says further: "Under such circumstances, and particularly in view of the absence of any evidence to support the respondent's determination, the petitioner's burden of proof is not where, the cost basis used by the decedent taxpayer is substantiated by entries in the original general ledger, by the oral testimony of three individuals who had discussed the subject with the decedent and have examined the books and records in which the decedent had recorded the expenditures made and liabilities incurred in the acquisition of the property in question, and by the respondent's long acquiescence in the continued use of such cost by decedent in determining his income tax liability from year to year." The stipulation supports the respondent's determination. The costs used in determining deductions for prior *49 years are not the costs which the petitioner now claims but are substantially larger amounts which the petitioner has not attempted to support by evidence. The revenue agent who made the examination for those years testified for the petitioner but was unable to recall that he had investigated beyond seeing the figures in the ledger and the memorandum book. The ledger is not a book of original entry. The origin of the entries in the "Buildings" and "Brewing Machinery" accounts in the general ledger are explained in the record. There is testimony that the decedent carried in his pocket a small black memorandum book in which he kept a record pertaining to the acquisition and operation of this brewing property. The witnesses had not seen the book for several years prior to the decedent's death and it was not found among his effects after his death. A certified public accountant testified that he had seen the book and had discussed the entries therein with the decedent after which he had made the original entries in the ledger of the decedent. The evidence does not show what, if anything, was in the book entries in addition to amounts. The accountant made an entry of $75,000 in the buildings *50 account, an entry of $100,000 in the brewing machinery account, and an entry of $25,000 in the land account, all under date of April 30, 1934. The first two have journal entry references which are unexplained. There is an entry of $500 in the buildings account under date of March 31, 1934, which is not explained. The first two accounts also contain a number of entries under later dates, none of which are explained except an entry in each to increase the balance in those accounts to show supposed appreciation of the assets. The witness testified that, after examining and discussing the items in the black book, he had eliminated a few items because he thought they related to the operation of the brewery, had added the other items, and had allocated the total thereof $25,000 to land, $75,000 to buildings, and $100,000 to brewing machinery. He said he told the decedent at that time that the decedent would have to have evidence to substantiate those figures if the Bureau of Internal Revenue ever questioned them. Asked whether he had ever seen any evidence to substantiate the figures, he replied that it was the Bureau of Internal Revenue which the decedent would have to satisfy and not him. *51 It seems apparent from his testimony that he made no attempt to determine whether or not the figures used by him actually represented costs of the property to the petitioner but simply accepted the decedent's word that they were the costs and thereafter made entries in the ledger. He does not now remember any of the details shown in the black memorandum book. The executor, the brother of the decedent, testified that he had seen the little black book and that the decedent had recorded in that book amounts which he had paid to disgruntled stockholders of Mutual Realty Company. He did not mention amounts. He was unable to remember much when cross-examined. The certified public accountant did not indicate whether or not any of the entries which he saw might have been payments to disgruntled stockholders. Checks of the decedent were mentioned but none were introduced in evidence. Justice is sometimes served by reliance upon secondary evidence where, due to death or loss, the best evidence is not available. J. H. McCallum, 14 B.T.A. 805. But here the evidence offered is so unreliable that it does not justify any change in the determination of the Commissioner. It is possible *52 that the decedent paid something to the disgruntled stockholders. It is also possible that they were satisfied in some other way as, for example, by receiving a part of the $56,000. Any change from the determination of the Commissioner here would be purely arbitrary and would not be supported by reasonably reliable evidence in this record. Decision will be entered for the respondent.